**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**SAN ANGELO DIVISION**

| | |
|---|---|
| RAYMOND NEWSON, individually and on behalf of those similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>LANDMARK ADMIN, LLC,<br><br>          Defendant. | Case No.: 6:24-CV-00082-H |
| DONALD TANNER, individually and all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>LANDMARK ADMIN, LLC,<br><br>          Defendant. | Case No.: 6:24-CV-00083-H |
| LA'TONYA WILLIAMS, individually and on behalf of those similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>LANDMARK ADMIN, LLC, and LIBERTY BANKERS INSURANCE GROUP,<br><br>          Defendants. | Case No.: 3:24-CV-02714-E |
| EDNA WHITTEN, individually and on behalf of those similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>LANDMARK ADMIN, LLC, and LIBERTY BANKERS INSURANCE GROUP<br><br>          Defendants. | Case No.: 3:24-cv-02723-S |

MIGUEL BOSCH, individually and on behalf of those similarly situated,

        Plaintiff,

v.

LANDMARK ADMIN, LLC, and LIBERTY BANKERS INSURANCE GROUP

        Defendants.

Case No.: 6:24-cv-00084-H

---

RANDY JACKSON, individually and on behalf of those similarly situated,

        Plaintiff,

v.

LANDMARK ADMIN, LLC, and LIBERTY BANKERS INSURANCE GROUP

        Defendants.

Case No.: 3:24-cv-02737-E

---

LYNDA ROBERTS, individually and on behalf of those similarly situated,

        Plaintiff,

v.

LANDMARK ADMIN, LLC, and LIBERTY BANKERS INSURANCE GROUP

        Defendants.

Case No.: 3:24-cv-02740-E

---

SHALENE WILLIS, individually and on behalf of those similarly situated,

        Plaintiff,

v.

LANDMARK ADMIN, LLC, and LIBERTY BANKERS INSURANCE GROUP

        Defendants.

Case No.: 3:24-cv-02741-S

---

ROZALYNN FISHER, individually and on behalf of those similarly situated,

        Plaintiff,

Case No.: 3:24-cv-02769-E

v.

LANDMARK ADMIN, LLC, and LIBERTY
BANKERS INSURANCE GROUP

Defendants.

| | |
|---|---|
| BRITTON BRYANT, individually and on behalf of those similarly situated, | Case No.: 3:24-cv-02789-N |
| Plaintiff, | |
| v. | |
| LANDMARK ADMIN, LLC, and LIBERTY BANKERS INSURANCE GROUP | |
| Defendants. | |
| KARA MONTAGUE, individually and on behalf of those similarly situated, | Case No.: 3:24-cv-02794-E |
| Plaintiff, | |
| v. | |
| LANDMARK ADMIN, LLC, and LIBERTY BANKERS INSURANCE GROUP | |
| Defendants. | |
| EMILY KARRICK, individually and on behalf of those similarly situated, | Case No.: 3:24-cv-02807-E |
| Plaintiff, | |
| v. | |
| LANDMARK ADMIN, LLC, and LIBERTY BANKERS INSURANCE GROUP | |
| Defendants. | |

**PLAINTIFFS' MOTION TO CONSOLIDATE ACTIONS,
APPOINT INTERIM CLASS COUNSEL AND SET A SCHEDULE**

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................ 2

II.    ARGUMENT AND AUTHORITIES ........................................................................ 3

    A.    Legal Standard for Consolidation ............................................................. 3

    B.    The Related Actions Should be Consolidated........................................... 4

    C.    Legal Standard for Appointment of Interim Class Counsel.................... 7

        i.    Appointment of Interim Class Counsel is Appropriate .............................. 8

        a.    Proposed Interim Class Counsel Have Performed Substantial Work Investigating and Litigating the Claims to Date. .................................................. 9

        b.    Proposed Leadership Counsel Possess the Necessary Experience, Skill, and Knowledge of the Law to Prosecute this Litigation.......................................... 10

III.    CONCLUSION.......................................................................................................... 22

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adedipe v. U.S. Bank, Nat. Ass'n*, No. CIV. 13-2687 JNE/JJK, 2014 WL 835174, at *3 (D. Minn. Mar. 4, 2014) ............................................................................................................... 9

*Armstrong et al. v. Gas South, LLC*, Civil Action No. 22106661 (Sup. Ct. Cobb Cty., Ga.) ....... 12

*Arnold & Co.* ................................................................................................................................ 7

*Arnold & Co., LLC v. David K. Young Consulting, LLC*, No. SA-13-CV-00146-DAE, 2013 WL 1411773, at *2 (W.D. Tex. Apr. 8, 2013) ............................................................................ 5

*Bayati* ......................................................................................................................................... 5

*Bayati v. GWG Holdings, Inc.*, No. 3:22-CV-0410-B, 2023 WL 5925880, at *2 (N.D. Tex. Sept. 12, 2023) ............................................................................................................................. 4

*Biondi v. Scrushy*, 820 A.2d 1148, 1159 (Del. Ch. 2003) ......................................................... 22

*Boone v. Snap, Inc.*, Case No. 2022LA000708 (18th Cir. DuPage Cty., Ill.) .............................. 16

*Boudreaux v. Systems East*, *Inc.*, Case No. 5:23-cv-01498 (N.D.N.Y.) ..................................... 12

*Buettgen v. Harless*, 2011 U.S. Dist. LEXIS 53888, at *27 (N.D. Tex. May 19, 2011) .............. 10

*Buonasera v. Honest Co., Inc.*, 318 F.R.D. 17, 18 (S.D. N.Y. 2016) ........................................... 8

*Cain et al v. CGM, L.L.C. et al*, Case No. 1:23-cv-02604 (N.D. Ga.) ......................................... 13

*Carlin v. Dairy America, Inc.*, 2009 WL 1518058, at *2 (E.D. Cal. May 29, 2009) ................... 21

*Carrera Aguallo v. Kemper Corp.*, Case No. 1:21-cv-01883 (N.D. Ill. Oct. 27, 2021) ............... 16

*Carter, et al. v. Vivendi Ticketing US LLC d/b/a See Tickets*, No. 8:22-cv-01981 (C.D. Cal.) ..... 12

*Dependable Component Supply Corp. v. Murata Mfg. Co.*, No. 5:18-CV-00198-EJD, 2018 WL 3388548, at *2 (N.D. Cal. Apr. 27, 2018) ........................................................................ 10

*Doe (S.M.A.) v. Salesforce, Inc.*, No. 3:23-CV-1040-B, 2023 WL 4108845, at *2 (N.D. Tex. June 20, 2023) ........................................................................................................................... 7

*Gabriel v. OneWest Bank FSB*, No. CIV.A. H-11-3356, 2012 WL 1158732, at *1 (S.D. Tex. Apr. 5, 2012) ................................................................................................................................. 7

*Gate Guard Servs. L.P. v. Solis*, No. CIV.A. V-10-91, 2011 WL 2784447, at *15 (S.D. Tex. July 12, 2011) ............................................................................................................................... 6

*Gilleo et al. v. California Pizza Kitchen, Inc.*, No. 8:2021-cv-01928-DOC-KES (C.D. Cal.) ..... 12

*In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1013 (5th Cir. 1977) .................................................................................................................................... 3

*In re Air Crash Disaster at Fla. Everglades*, 549 F.2d at 1014 ....................................................... 4

*In re Aluminum Phosphide Antitrust Litig.*, No. 93-2452, 1994 WL 481847, at *5, 7 (D. Kan. May 17, 1994) ................................................................................................................................ 19

*In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 586 (N.D. Ill. 2022) ........... 15

*In re Blackbaud, Inc., Customer Data Breach Litig.,* No. 3:20-MN-02972-JMC, 2021 WL 2718439, at *1 (D.S.C. July 1, 2021) ..................................................................................... 15

*In re Clearwater Credit Union Data Security Incident Litigation*, Case No. DV-32-2023-0000761 (4th Judicial Dist., Missoula Cty., Mont.) ........................................................................... 13

*In re Data Security Litigation Against Brightline, Inc.*, Case No. 3:23-cv-02132 ....................... 13

*In re Family Vision Data Security Incident Litigation*, Case No. 2023CP0401671 (S.C., County of Anderson) .............................................................................................................................. 12

*In re IndyMac ERISA Litig.*, No. CV0804579DDPVBKX, 2008 WL 11343122, at *2 (C.D. Cal. Oct. 7, 2008) ........................................................................................................................... 9

*In re Insulin Pricing Litig.*, 2017 WL 4122437, at *3 (D.N.J. Sept. 18, 2017) ........................... 21

*In re Lenovo Adware Litig.* ..................................................................................................11

*In re Lenovo Adware Litig.*, No. 15-MD-02624, 2015 WL 10890657, at *1 (N.D. Cal. July 27, 2015) ..................................................................................................... 10

*In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D. N.Y. 2008) ....................... 8, 21

*In re Prudential Ins. Co. Sales Practice Litig.*, No. 95-4704 (D.N.J.)......................................... 16

*In re Retina Group of Washington Data Security Incident Litigation*, Case No. 8:24-cv-00004 (D. Md.) .................................................................................................... 13

*In re Sovos Compliance Data Security Incident Litigation*, Case No. 1:23-cv-12100 (D. Mass.) 12

*In re Sovos Compliance Data Security Incident Litigation*, Case No. 1:23-cv-12100-AK .......... 12

*In re Tyco Int'l Ltd., Sec. Litig.*, MDL 1335 (D.N.H.) ................................................................... 16

*In re Wendy's Co. S'holder Derivative Litig.*, No. 1:16-cv-1153, 2018 WL 6605394 at *2 (S.D. Ohio Dec. 17, 2018)................................................................................................ 19

*In re: East Palestine Train Derailment*, No. 23-cv-00242 (N.D. Ohio) ...................................... 16

*In re: MoveIt Customer Data Security Breach Litigation*, 1:23-md-03083 (D. Mass.)............... 15

*In re: Vivendi Ticketing US LLC, d/b/a See Tickets Data Security Incident*, Case No. 2:23-cv-07498 (C.D. Cal.)................................................................................................... 13

*Isaiah v. LoanDepot, Inc.*, 8:24-cv-00136-DOC-JCE (C.D. Cal)............................................... 15

*JFP Servs., L.L.C. v. Torans*, No. SA-17-CV-00210-FB, 2017 WL 9362704, at *2 (W.D. Tex. Dec. 21, 2017)................................................................................................ 6

*Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *1 (N.D. Ill. 2018) .. 16

*Kjessler v. Zaappaaz, Inc.*, No. 4:17-CV-3064, 2018 WL 8755737, at *3 (S.D. Tex. Aug. 31, 2018) ................................................................................................ 8

iv

*Krenk et al. v. Murfreesboro Medical Clinic, P.A. d/b/a Murfreesboro Medical Clinic & Surgicenter*, Case No. 2023-cv-81005 (Tenn. 16th Judicial Cir. Court, Rutherford Cty.)........ 13

*Kubiak v. Barbas*, No. 3:11-cv-141, 2011 WL 2443715, at *2 (S.D. Ohio June 14, 2011).......... 19

*Lockhart* ....................................................................................................................... 5

*Lockhart v. El Centro Del Barrio*, No. SA-23-CV-01156-JKP, 2024 WL 303253, at *2 (W.D. Tex. Jan. 25, 2024)................................................................................................................... 4

*Luera v. M/V Alberta*, 635 F.3d 181, 194 (5th Cir. 2011) ............................................. 3

*Mayfield* ......................................................................................................................... 7

*Medina v. Albertsons Companies, Inc.*, Case No. 1:23-cv-00480 (D. Del.) ................................. 12

*Michelle v. Arctic Zero, Inc.*, 2013 WL 791145, at *2 n.3 (S.D. Cal. Mar. 1, 2013) .................... 21

*Moehrl v. Nat'l Ass'n of Realtors*, No. 19-cv-01610, 2020 U.S. Dist. LEXIS 164895, at *10 (N.D. Ill. May 30, 2020) ........................................................................................................... 19

*Moradi v. Adelson*, 2011 WL 5025155, at *3 (D. Nev. Oct. 20, 2011)........................................ 22

*Morrill v. Lakeview Loan Servicing, LLC*, Case No. 1:22-cv-20955-DPG (S.D. Fla.) ................ 15

*Nulf v. Alvaria, Inc., et al.*, Case No. 1:23-cv-10999 (D. Mass.)................................................. 12

*Pacheco et al. v. Community First Medical Center*, Case No. 2023-CH08487 (Cir. Court of Cook Cty., Ill.) ........................................................................................................................... 13

*Parris, et al., v. Meta Platforms, Inc.*, Case No.2023LA000672 (18th Cir. DuPage Cty., Ill.) ..... 16

*Perez v. Carvin Wilson Software LLC*, Case No. cv-23-00792 (D. Ariz.) .................................... 12

*Pulliam et al. v. West Technology Group*, Case No. 8:23-cv-159 (D. Neb.)................................. 12

*Rasmussen et al. v. Uintah Basin Healthcare*, Case No. 2:23-cv-00322 (D. Ut.) ........................ 12

*Richey v. Ells*, 2013 WL 179234, at *2 (D. Colo. Jan. 17, 2013) ............................................... 21

*Scott et al v. Union Bank and Trust Company*, Case No. 4:23-cv-03126 (D. Neb.)..................... 12

*Shane White v. Medical Review Institute of America, LLC*, Case No.: 2:22-cv-00082-DBP, 2022 U.S. Dist. LEXIS 132016, at *8 (D. Utah July 22, 2022).......................................................... 21

*Sherwood v. Horizon Actuarial Services, LLC*, Case No. 1:22-cv-01495-ELR (N.D. Ga.) ......... 15

*Skurauskis, et al. v. NationsBenefits Holdings, LLC, et al.*, Case No. 0:23-cv-60830 (S.D. Fl.) . 13

*St. Bernard Gen. Hosp., Inc. v. Hosp. Serv. Ass'n of New Orleans, Inc.*, 712 F.2d 978, 989 (5th Cir. 1983) ....................................................................................................................................... 4

*Steele v. United States*, 2015 WL 4121607, at *4 (D.D.C. June 30, 2015)................................... 21

*Stoneeagle Servs., Inc. v. Gillman*, No. 3:11-CV-02408-P, 2014 WL 12577069, at *3 (N.D. Tex. Jan. 28, 2014) .......................................................................................................................... 6

*U.S. ex rel Frey v. Health Mgmt. Sys., Inc.*, No. 3:19-cv-1141-B, 2021 WL 9145414, at *2 (N.D. Tex. Mar. 15, 2021) ................................................................................................................. 5

*Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365 (1st Cir. 2023)...................................... 15

*Zolezzi* ...................................................................................................................................... 6, 7

*Zolezzi v. Celadon Trucking Servs., Inc.*, No. CIV.A.H-08-3508, 2009 WL 736057, at *1 (S.D. Tex. Mar. 16, 2009) ................................................................................................................. 5

**Rules**

Fed. R. Civ. P. 23................................................................................................................................ 7

Federal Rule of Civil Procedure 42................................................................................................... 3

Rule 42 .............................................................................................................................................. 3

**Other Authorities**

Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices for Large and Mass-Tort MDLs* at 38, 45-46 (2d ed. 2018) ..................................................................................... 17

Duke Guidelines..................................................................................................................... 20

Manual for Complex Litigation ............................................................................................ 20

Manual for Complex Litigation ("MCL") § 21.11 (4th ed. 2004).................................................. 7

Manual for Complex Litigation § 10.221 ...........................................................................................11

Manual for Complex Litigation §§ 10.22 ....................................................................................... 19

Plaintiffs in the above-captioned actions ("Plaintiffs"), individually, and on behalf of all those similarly situated, respectfully request that the Court: (1) pursuant to Federal Rule of Civil Procedure 42(a), consolidate the above-styled actions (the "Related Actions"), as well as any other future actions based upon the same underlying data incident, under the first-filed case number and bearing the new case style: "*In re Landmark Admin LLC Data Incident Litigation*"; (2) appoint Plaintiffs' leadership structure consisting of Tyler J. Bean of Siri & Glimstad LLP, A. Brooke Murphy of Murphy Law, and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC as Interim Co-Lead Counsel ("Proposed Interim Co-Lead Counsel"), Joe Kendall of Kendall Law Group, LLP as Local Counsel ("Proposed Local Counsel"), and Billy Howard of The Consumer Protection Firm (to be Executive Committee Chair), Jeff Ostrow of Kopelowitz Ostrow, P.A., Jonathan S. Mann of Pittman, Dutton, Hellums, Bradley & Mann, P.C., Andrew Shamis of Shamis & Gentile, P.A., Billy Howard of The Consumer Protection Firm, J. Gerard Stranch IV of Stranch, Jennings & Garvey, PLLC, Marc H. Edelson of Edelson Lechtzin LLP, LLP, Terry R. Coates of Markovits, Stock & DeMarco, LLC, M. Anderson Berry of Clayeo C. Arnold, Jessica Wilkes of Federman & Sherwood, Courtney Maccarone of Levi & Korsinsky, Bruce Steckler of Steckler Wayne & Love, PLLC, and Stephen R. Basser of Barrack, Rodos, & Bacine to the Plaintiffs' Interim Executive Committee ("Proposed PEC") (collectively "Proposed Interim Class Counsel"); (3) stay the Related Actions, including any of the Defendants' responsive pleading deadlines, and require the filing of a consolidated class action complaint ("Consolidated Complaint") within 60 days of entry of an order consolidating the cases and appointing leadership; and (4) set the deadline for Defendants' response to the Consolidated Complaint 60 days after the Consolidated Complaint is filed, set the deadline of 60 days thereafter for Plaintiffs' response thereto, followed by 30 days thereafter for the Defendants' reply.

1

As discussed below, consolidation is proper because each action: (i) is based on the same alleged data incident; (ii) is brought against the same defendant; (iii) asserts the same or overlapping allegations and claims for relief; and (iv) seeks to represent the same or overlapping putative classes. Given the common alleged factual background and claims asserted in each action, consolidation will streamline litigation and preserve judicial and party resources.

## I.   INTRODUCTION

All of the above-captioned cases arise out of the same data incident involving Landmark Admin, LLC's computer systems occurring on or around May 13, 2024, resulting in the potential accessibility of Plaintiffs' and the Class Members' personally identifiable information ("PII") (the "Data Incident"). Jurisdiction exists as to this LLC in this class action pursuant to 28 U.S.C. § 1332(d)(10).Landmark Admin, LLC ("Landmark") is a third-party administrator for insurance carriers, including Liberty Bankers Insurance Group ("LBIG" and, together with Landmark, "Defendants"). LBIG collected Plaintiffs' PII and provided it to Landmark for administration services. Plaintiffs learned they were victims of the Data Incident, and each decided to file their respective putative class actions following their receipt of notice letters from Defendants in October 2024.[1]

The Related Actions focus on the same underlying factual premise—the Data Incident—and assert substantially identical (if not identical) claims on behalf of the same or substantially similar putative classes.  Each plaintiff relies on the same set of alleged operative facts as to the

---

[1] The Related Actions are: *Newsom v. Landmark Admin, LLC*, Case No. 6:24-cv-00082 (N.D. Tex.); *Tanner v. Landmark Admin, LLC*, Case No. 6:24-cv-00083 (N.D. Tex.); *Williams v. Landmark Admin, LLC, et al.*, Case No. 3:24-cv-02714 (N.D. Tex.); *Whitten v. Landmark Admin, LLC, et al.*, Case No. 3:24-cv-02723 (N.D. Tex.); *Bosch v. Landmark Admin, LLC, et al.*, Case No. 6:24-cv-00084 (N.D. Tex.); *Jackson v. Landmark Admin, LLC, et al.*, Case No. 3:24-cv-02737 (N.D. Tex.); *Roberts v. Landmark Admin, LLC, et al.*, Case No. 3:24-cv-02740 (N.D. Tex.); *Willis v. Landmark Admin, LLC, et al.*, Case No. 3:24-cv-02741 (N.D. Tex.); *Fisher v. Landmark Admin, LLC, et al.*, Case No. 3:24-cv-02769 (N.D. Tex.); *Bryant v. Landmark Admin, LLC, et al.*, Case No. 3:24-cv-02789 (N.D. Tex.); *Montague v. Landmark Admin, LLC, et al.*, Case No. 3:24-cv-02794 (N.D. Tex.); *Karrick v. Landmark Admin, LLC, et al.*, Case No. 3:24-cv-02807 (N.D. Tex.).

Data Incident, asserts overlapping claims, on behalf of similarly defined classes, seeking similar relief. Consolidation is therefore appropriate. In these circumstances, Plaintiffs, the Class, Defendants and the Court will be best served in a consolidated proceeding, which will preserve party and Court resources.

Proposed Interim Class Counsel satisfy the elements of Fed. R. Civ. P. 23(g) and are well-suited to lead the prosecution of this litigation on behalf of Plaintiffs and the proposed Class. Proposed Interim Class Counsel have spent a significant amount of time and effort investigating, researching, and litigating the case, are familiar with the legal and factual issues in question, and intend to pursue a strategy that works best for the interests of the putative Class that Plaintiffs seek to represent.

Now, with multiple cases on file against Defendants and the inevitable likelihood that more will follow, Plaintiffs request that the Related Actions—which involve materially similar allegations against Landmark and/or LBIG and seek to certify materially similar classes—be consolidated and that the Court appoint Interim Class Counsel. Plaintiffs and counsel in all Related Actions support consolidation and the appointment of Proposed Interim Class Counsel.

## II.   <u>ARGUMENT AND AUTHORITIES</u>

### A.   **Legal Standard for Consolidation**

Federal Rule of Civil Procedure 42(a) provides:

> If actions before the court involve a common question of law ***or*** fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay.

(emphasis added).  "Rule 42(a) provides district courts with broad authority to consolidate actions that 'involve a common question of law or fact.'" *Luera v. M/V Alberta*, 635 F.3d 181, 194 (5th Cir. 2011) (quoting Fed. R. Civ. P. 42(a)); *see also In re Air Crash Disaster at Fla. Everglades on Dec. 29, 1972*, 549 F.2d 1006, 1013 (5th Cir. 1977) ("The trial court's managerial power is

3

especially strong and flexible in matters of consolidation.").

"The purpose of consolidation is to permit trial convenience and economy in administration." *In re Air Crash Disaster at Fla. Everglades*, 549 F.2d at 1014 (citation omitted). Accordingly, "district judges have been urged to make good use of Rule 42(a) in order to expedite the trial and eliminate unnecessary repetition and confusion." *Id.* at 1013 (citation, quotations, and alterations omitted); *see also St. Bernard Gen. Hosp., Inc. v. Hosp. Serv. Ass'n of New Orleans, Inc.*, 712 F.2d 978, 989 (5th Cir. 1983) ("Consolidating actions in a district court is proper when the cases involve common questions of law and fact, and the district judge finds that it would avoid unnecessary costs or delay.").

The following factors are pertinent to the decision of whether to consolidate actions:

> (1) whether the actions are pending before the same court; (2) whether the actions involve a common party; (3) any risk of prejudice or confusion from consolidation; (4) the risk of inconsistent adjudications of common factual or legal questions if the matters are tried separately; (5) whether consolidation will reduce the time and cost of trying the cases separately; and (6) whether the cases are at the same stage of preparation for trial.

*Bayati v. GWG Holdings, Inc.*, No. 3:22-CV-0410-B, 2023 WL 5925880, at *2 (N.D. Tex. Sept. 12, 2023).

### B.   The Related Actions Should be Consolidated.

Each Related Action involves common questions of law and/or fact, and all relevant factors weigh in favor of consolidation, which will promote efficiency and uniformity without prejudicing any party. The Court should therefore consolidate all Related Actions with this first-filed case.

All Related Actions involve common factual and/or legal questions as they arise from the same occurrence: the Data Incident. Courts have recognized that consolidation is appropriate where multiple actions arise from the same data breach event. *See, e.g.*, *Lockhart v. El Centro Del Barrio*, No. SA-23-CV-01156-JKP, 2024 WL 303253, at *2 (W.D. Tex. Jan. 25, 2024) (finding

4

consolidation appropriate because "Plaintiffs are all patients of Defendant asserting causes of action based on the same data breach resulting from the same cyberattack"); *Kaplan v. 21st Century Oncology Holdings*, No. 2:16-cv-210, 2016 WL 9383330, at *2 (M.D. Fla. July 21, 2016) ("it is clear that common questions of law and fact permeate these cases [because] . . . all of the cases appear to arise from the same alleged" data privacy incident).

Because all Related Actions are filed in this District, the first factor guiding the Court's analysis weighs in favor of consolidation.  *See U.S. ex rel Frey v. Health Mgmt. Sys., Inc.*, No. 3:19-cv-1141-B, 2021 WL 9145414, at *2 (N.D. Tex. Mar. 15, 2021) (first factor satisfied when "the cases are pending in the same court"); *Zolezzi v. Celadon Trucking Servs., Inc.*, No. CIV.A.H-08-3508, 2009 WL 736057, at *1 (S.D. Tex. Mar. 16, 2009) (first factor satisfied where both actions filed in same district and division).

The second factor is likewise satisfied because all Related Actions are against Defendant Landmark and seek to certify national classes of similarly situated individuals whose Private Information was allegedly accessible in the Data Incident.  *See Lockhart*, 2024 WL 303253, at *2 (fact that all cases filed on behalf of same class of data breach victims against same defendant supports consolidation); *Bayati*, 2023 WL 5925880, at *2 (consolidating actions filed on behalf of same proposed class against same defendant); *Arnold & Co., LLC v. David K. Young Consulting, LLC*, No. SA-13-CV-00146-DAE, 2013 WL 1411773, at *2 (W.D. Tex. Apr. 8, 2013) (ordering consolidation where "[b]oth cases involve essentially the same parties").

The third and fourth factors favor consolidation as well.  On one hand, trying the Related Actions separately would risk inconsistent findings and rulings in each case arising from the same Data Incident, brought on behalf of the same putative class of individuals allegedly affected, against the same Defendant.  *See Lockhart*, 2024 WL 303253, at *2 (finding that "[c]onsolidation

will ensure consistent rulings and promote judicial economy" where three cases asserted "causes of action based on the same data breach resulting from the same cyberattack"); *JFP Servs., L.L.C. v. Torans*, No. SA-17-CV-00210-FB, 2017 WL 9362704, at *2 (W.D. Tex. Dec. 21, 2017) ("In light of these common questions of law and fact, the Court finds there is a risk of inconsistent adjudication if the Court were to allow these cases to be tried separately before different judges[.]").  On the other hand, "[a]ny prejudice to the parties flowing from the consolidation would be minimal in comparison to these considerations."  *Id.*; *see also Stoneeagle Servs., Inc. v. Gillman*, No. 3:11-CV-02408-P, 2014 WL 12577069, at *3 (N.D. Tex. Jan. 28, 2014)  ("Given the substantial similarities among the facts and causes of action, the prospect of confusion incumbent on the fact finder will be nominal at best because these cases tell the same story[.]"); *Zolezzi*, 2009 WL 736057, at *2 ("[T]he court finds that the risk of prejudice or confusion if the cases are consolidated is minimal. This risk is, therefore, outweighed by the risk of inconsistent judgments should the cases be tried separately.").

Regarding the fifth factor, consolidating the Related Actions will certainly reduce the time and costs for all involved by eliminating the need for separate filings, discovery, settlement negotiations, hearings, and trials for the 16 cases arising from the same Data Incident, involving the same Defendant and putative classes, and presenting the same factual and legal issues.  This factor thus weighs in favor of consolidation.  *See Bayati*, 2023 WL 5925880, at *2 (where two actions "make nearly identical legal claims based on the same set of facts," and were "filed on behalf of the same proposed class," consolidation "would therefore promote judicial efficiency"); *Gate Guard Servs. L.P. v. Solis*, No. CIV.A. V-10-91, 2011 WL 2784447, at *15 (S.D. Tex. July 12, 2011) (ordering consolidation where "the same factual and legal issues exist in both cases and consolidating the actions would be more efficient than litigating the two cases separately").

6

Finally, because all Related Actions are at the same early procedural stage—complaints are filed, but there have been no responsive pleadings, and no scheduling orders have been entered—the sixth factor weighs in favor of consolidation. *See Doe (S.M.A.) v. Salesforce, Inc.*, No. 3:23-CV-1040-B, 2023 WL 4108845, at *2 (N.D. Tex. June 20, 2023) (granting consolidation where cases at the same pre-trial stage); *Arnold & Co.*, 2013 WL 1411773, at *2 (ordering consolidation where "the cases were filed less than one month apart, no dispositive motions have been filed in either case, and very little discovery has occurred"); *Gabriel v. OneWest Bank FSB*, No. CIV.A. H-11-3356, 2012 WL 1158732, at *1 (S.D. Tex. Apr. 5, 2012) (ordering consolidation where "[n]either case has been set on schedule yet, so the litigation is at the same stage in both"); *Zolezzi*, 2009 WL 736057, at *2 (ordering consolidation where "both actions are at the early stages of litigation").

Accordingly, because all factors weigh in favor of consolidation, consolidating the Related Actions "is not only appropriate, but would promote this Court's judicial efficiency and economy and would tend to avoid unnecessary costs or delay." *Mayfield*, 2003 WL 21250935, at *2. The Court should therefore consolidate the Related Actions into this first-filed case.

### C.    Legal Standard for Appointment of Interim Class Counsel.

Rule 23(g)(3) explicitly permits a court to "designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action." Fed. R. Civ. P. 23(g)(3). "[D]esignation of interim counsel clarifies responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification, and negotiating settlement." Manual for Complex Litigation ("MCL") § 21.11 (4th ed. 2004).

When appointing interim class counsel, courts generally look to the same factors used in determining the adequacy of class counsel under Fed. R. Civ. P. 23(g)(1)(A). *See Kjessler v.*

*Zaappaaz, Inc.*, No. 4:17-CV-3064, 2018 WL 8755737, at *3 (S.D. Tex. Aug. 31, 2018) (citing *Buonasera v. Honest Co., Inc.*, 318 F.R.D. 17, 18 (S.D. N.Y. 2016); *In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D. N.Y. 2008).) Under the rule, a court appointing class counsel must evaluate whether the proposed counsel will fairly and adequately represent the interests of the class. *See* Fed. R. Civ. P. 23(g)(2), (4). In doing so, a court must consider the following factors: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A), (2). A court, in its discretion, also may consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

### i.    *Appointment of Interim Class Counsel is Appropriate*

Proposed Interim Class Counsel satisfy all the requirements for appointment by the Court under Fed. R. Civ. P. 23(g)(3). The attorneys and their firms have successfully litigated numerous class actions involving privacy claims on behalf of tens of millions of consumers. Proposed Interim Class Counsel possess the necessary resources to prosecute this litigation, have the support of the Plaintiffs from each of the cases on file, are working together collectively already, and will continue to work in this fashion to manage this litigation effectively and efficiently. Because Proposed Interim Class Counsel have the case-management and complex-litigation skills, experience, knowledge of the relevant facts and legal issues, support of all Plaintiffs and their counsel from the Related Actions, and the extensive resources needed to efficiently prosecute this action on behalf of putative class members, the Court should grant Plaintiffs' motion. Proposed Interim Class Counsel work, experience, knowledge, resources, and successful track record

8

litigating consumer data breach cases demonstrate that they are superbly qualified to represent the Proposed Class's interests under the factors enumerated in Fed. R. Civ. P. 23.

a.      *Proposed Interim Class Counsel Have Performed Substantial Work Investigating and Litigating the Claims to Date.*

One factor courts consider is the work and resources counsel expend investigating the claims being asserted when appointing lead counsel. *See, e.g., Adedipe v. U.S. Bank, Nat. Ass'n*, No. CIV. 13-2687 JNE/JJK, 2014 WL 835174, at *3 (D. Minn. Mar. 4, 2014) (appointing interim class counsel because they "devoted the more substantial effort towards pre-suit investigation and identification of claims"); *In re IndyMac ERISA Litig.*, No. CV0804579DDPVBKX, 2008 WL 11343122, at *2 (C.D. Cal. Oct. 7, 2008) (same).

Here, immediately after the public announcement of the Data Incident, Proposed Interim Class Counsel began investigating potential legal claims and remedies for the victims of the breach. Those investigations included, among other things:

- Investigating the facts surrounding the Data Incident;

- Interviewing numerous customers injured by the Data Incident;

- Researching legal claims;

- Drafting initial pleadings; and

- Organizing Plaintiffs and their counsel and discussing consolidating the relevant actions for unified proceedings and preparing the consolidation and proposed leadership papers.

The facts alleged by Plaintiffs in the Related Actions are material in terms of the alleged impact to individual customers and the consumer marketplace as a whole. Given the scope of the Data Incident and the number of individuals potentially affected, Proposed Interim Class Counsel worked to quickly organize and avoid any delay that could result from a leadership dispute to

9

address the merits of the case as expeditiously as possible. Moreover, in the spirit of their prior and positive working relationship, assignments have been, and will continue to be, allocated fairly and in a manner that takes advantage of the strengths of each firm while eliminating any duplicity.

Proposed Interim Class Counsel will continue to operate as a cohesive, well-organized group. Going forward, and if appointed, Proposed Interim Class Counsel will establish a standardized protocol for managing and reporting time and expenses incurred to prosecute the case as efficiently as possible. *See, e.g.*, *In re Lenovo Adware Litig.*, No. 15-MD-02624, 2015 WL 10890657, at *1 (N.D. Cal. July 27, 2015) (noting that the establishment of a "reasonable, fair, and transparent" billing protocol is an important factor in selecting interim class counsel).

Accordingly, the substantial work and investigation to date weigh in favor of appointing Proposed Interim Class Counsel under Fed. R. Civ. P. 23(g)(3), as Proposed Interim Class Counsel are organized, unified, and committed to working together for the best interests of the class. *Dependable Component Supply Corp. v. Murata Mfg. Co.*, No. 5:18-CV-00198-EJD, 2018 WL 3388548, at *2 (N.D. Cal. Apr. 27, 2018) (selecting interim counsel based on the effort expended to investigate the claims and the resources available to prosecute the litigation).

        b.      *Proposed Leadership Counsel Possess the Necessary Experience, Skill, and Knowledge of the Law to Prosecute this Litigation.*

A primary factor in selecting interim counsel is their experience, skill, knowledge, and familiarity with the relevant law. *See, e.g.*, *Buettgen v. Harless*, 2011 U.S. Dist. LEXIS 53888, at *27 (N.D. Tex. May 19, 2011) (appointing class counsel with substantial experience in class actions and demonstrated knowledge of the relevant law). Proposed Interim Class Counsel have the experience and skill to prosecute this action efficiently and effectively. As set forth below, their résumés include extensive experience leading complex class actions, including data breach cases on behalf of millions of consumers. They will formulate and present positions on substantive and

10

procedural issues during the litigation. *See* Manual for Complex Litigation § 10.221 ("Typically [lead counsel] act for the group—either personally or by coordinating the efforts of others—in presenting written and oral arguments and suggestions to the court, working with opposing counsel in developing and implementing a litigation plan, initiating and organizing discovery requests and responses, conducting the principal examination of deponents, employing experts, arranging for support services, and seeing that schedules are met."). Courts have found that proposed leadership counsel's experience and service as lead counsel in prior cases is particularly persuasive. *See, e.g.*, *In re Lenovo Adware Litig.*, 2015 WL 10890657, at *2 (finding class-action and complex litigation leadership experience relevant for appointment).

As demonstrated below, Proposed Interim Class Counsel each have substantial data breach class-action experience, resources, and knowledge that will undoubtedly benefit the putative class as this litigation proceeds.

**Proposed Interim Co-Lead Counsel**

### *Tyler J. Bean of Siri & Glimstad LLP*

Tyler J. Bean is an attorney at Siri & Glimstad LLP ("S&G"), a national class action firm that has served as class counsel in a broad spectrum of class action and civil rights cases nationwide and recovered compensation for millions of individuals. Mr. Bean's practice concentrates on complex civil litigation and consumer class actions, with a particular emphasis on data breach and privacy litigation. He has years of experience as a data breach and privacy lawyer, having played a significant role in successfully litigating dozens of data breach and privacy class actions from inception through discovery and leading to court approved settlement.

As a leading member of S&G's data breach and privacy group, Mr. Bean oversees all data breach and privacy matters currently on S&G's docket, including cases in which S&G served or

11

is serving as **(1) settlement class counsel** (*e.g., Carter, et al. v. Vivendi Ticketing US LLC d/b/a See Tickets*, No. 8:22-cv-01981 (C.D. Cal.), which received final approval for a settlement involving 437,310 class members and a $3,000,000 non-reversionary settlement fund; *Gilleo et al. v. California Pizza Kitchen, Inc.*, No. 8:2021-cv-01928-DOC-KES (C.D. Cal.), which settled with over $2,000,000 of relief going to the class members; *Armstrong et al. v. Gas South, LLC*, Civil Action No. 22106661 (Sup. Ct. Cobb Cty., Ga.) which received final approval for a settlement involving 38,671 class members and valued at over $9 million; *Medina v. Albertsons Companies, Inc.*, Case No. 1:23-cv-00480 (D. Del.), which received final approval for a settlement involving 33,000 class members and a $750,000 non-reversionary settlement fund; and *In re Sovos Compliance Data Security Incident Litigation*, Case No. 1:23-cv-12100-AK, which received preliminary approval for a settlement involving roughly 490,000 class members and a $3,534,128.50 non-reversionary settlement fund), and **(2) court-appointed interim class counsel** (*e.g., Pulliam et al. v. West Technology Group*, Case No. 8:23-cv-159 (D. Neb.) (appointed as interim co-lead class counsel); *Perez v. Carvin Wilson Software LLC*, Case No. cv-23-00792 (D. Ariz.) (same), *Nulf v. Alvaria, Inc., et al.*, Case No. 1:23-cv-10999 (D. Mass.) (same), *Rasmussen et al. v. Uintah Basin Healthcare*, Case No. 2:23-cv-00322 (D. Ut.) (same), *In re Family Vision Data Security Incident Litigation*, Case No. 2023CP0401671 (S.C., County of Anderson) (same); *In re Sovos Compliance Data Security Incident Litigation*, Case No. 1:23-cv-12100 (D. Mass.) (same); *Boudreaux v. Systems East, Inc.*, Case No. 5:23-cv-01498 (N.D.N.Y.) (same); *Scott et al v. Union Bank and Trust Company*, Case No. 4:23-cv-03126 (D. Neb.) (same, the court commenting that "proposed interim co-lead counsel are experienced and qualified attorneys, and each has knowledge of the applicable law, experience in managing and prosecuting cases involving data security and privacy, notable successes against large corporate defendants, and resources they are

12

willing to expend to litigate these cases"); *In re Data Security Litigation Against Brightline, Inc.*, Case No. 3:23-cv-02132 (appointed as interim lead class counsel); and *Skurauskis, et al. v. NationsBenefits Holdings, LLC, et al.*, Case No. 0:23-cv-60830 (S.D. Fl.) (appointed to the plaintiffs' executive committee)).

Mr. Bean was also most recently appointed as interim co-lead counsel in *In re Retina Group of Washington Data Security Incident Litigation*, Case No. 8:24-cv-00004 (D. Md.); *Pacheco et al. v. Community First Medical Center*, Case No. 2023-CH08487 (Cir. Court of Cook Cty., Ill.); *In re Clearwater Credit Union Data Security Incident Litigation*, Case No. DV-32-2023-0000761 (4th Judicial Dist., Missoula Cty., Mont.); and *In re: Vivendi Ticketing US LLC, d/b/a See Tickets Data Security Incident*, Case No. 2:23-cv-07498 (C.D. Cal.), as well as to the plaintiffs' executive committee in *Cain et al v. CGM, L.L.C. et al*, Case No. 1:23-cv-02604 (N.D. Ga.) and *Krenk et al. v. Murfreesboro Medical Clinic, P.A. d/b/a Murfreesboro Medical Clinic & Surgicenter*, Case No. 2023-cv-81005 (Tenn. 16th Judicial Cir. Court, Rutherford Cty.).

Further details about Mr. Bean's firm are included in the firm resume attached hereto as **Exhibit 1**.

### A. Brooke Murphy of Murphy Law Firm

A. Brooke Murphy is the founding member of Murphy Law Firm. For more than a decade, Ms. Murphy has specialized in representing plaintiffs in class actions and other complex litigation. Ms. Murphy has litigated numerous data breach class actions across the country where she has obtained several successful rulings on issues of standing, pleading, and class certification. Ms. Murphy has similarly overcome common challenges by defendants in data breach class actions, including on matters involving the applicability of arbitration clauses, assertions of privilege or work-product protections, and attempts to exclude expert testimony.

Through her involvement in data breach class actions, Ms. Murphy has worked closely with consulting and testifying experts to assist in the preparation of data security and damages reports. Ms. Murphy has conducted technical depositions of data security personnel, forensic investigators, and information security consultants. Ms. Murphy is also well-skilled in managing and navigating large document productions and has overseen the search and review of productions involving millions of pages of documents.

Based on her years of extensive experience, Ms. Murphy has been court-appointed as class counsel or co-lead counsel in several data breach class actions. *See, e.g., Archambault v. Riverside Resort & Casino, Inc. and Riverside Resort & Casino, LLC*, Case No. 2:24-cv-1691 (D. Nev.); *Hufstetler, et al. v. Upstream Rehabilitation, Inc., et al.*, Case No. 01-CV-2024-902563.00 (Ala. Cir. Ct. of Jefferson County); *In re Bridgeway Center Cyber Incident Litigation*, Case No. 2024-CA-1395 (Okaloosa County, Fla.); *Saker v. Cherry Street Services, Inc.,* Case No. 24-04205-NZ (Mich., Kent Cty.); *Lockridge v. Quality Temporary Services, Inc.,* Case No. 4:22-cv-12086 (S.D. Mich.); *Rose v. BHI Energy Services, LLC, et al.*, Case No. 1:23-cv-12513 (D. Mass.); *In re Precision Imaging Centers Data Breach Litigation.*, Case No. 2023-CA-009321 (Duval County, Fla.); *In re: Mondelez Data Breach Litig.*, Case No. 1:23-cv-0399 (N.D. Ill.); *Perez v. Carvin Wilson Software, LLC,* Case No. CV-23-00792-PHX-SMM (D. Ariz.); *Sanders, et al., v. Ibex Global Solutions, Inc., et al.*, Case No. 1:22-cv-00591-TNM (D.C.C.); *In re: Solara Medical Supplies Data Breach Litig.,* Case No. 3:19-cv-00284-H-KSC (S.D. Cal.); *McFarlane v. Altice USA, Inc.,* Case No. 20-CV-1297-JMF (S.D.N.Y.). Ms. Murphy's biography and resume is attached hereto as **Exhibit 2**.

### Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC

Mr. Klinger is a Partner at Milberg and Chair of its Cybersecurity and Data Privacy Practice Group. Mr. Klinger is recognized as one of the most respected data privacy attorneys in the United States, having been selected to Lawdragon's 500 Leading Litigators in America for his accomplishments in privacy litigation.[2] He has extensive experience serving as leadership in numerous privacy class actions, including as lead or co-lead counsel in the largest data breaches in the country. *See, e.g., In re: MoveIt Customer Data Security Breach Litigation*, 1:23-md-03083 (D. Mass.) (where Mr. Klinger was appointed to the leadership committee in multi-district litigation involving a data breach that impacted more than 95 million consumers); *Isaiah v. LoanDepot, Inc.*, 8:24-cv-00136-DOC-JCE (C.D. Cal) (where Mr. Klinger was appointed co-lead counsel in a data breach that impacted 17 million consumers).[3] Mr. Klinger and his firm have played an important role in developing the favorable case law that many plaintiffs rely on in the data breach space. *See e.g., Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365 (1st Cir. 2023) (Milberg attorneys obtained a decision from the First Circuit reversing the dismissal with prejudice of a data breach case and finding Article III standing); *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 586 (N.D. Ill. 2022) (Milberg attorneys largely defeated a motion to dismiss in a data breach case involving 3 million consumers); *In re Blackbaud, Inc., Customer Data Breach Litig.,* No. 3:20-MN-02972-JMC, 2021 WL 2718439, at *1 (D.S.C. July 1, 2021) (Milberg attorneys defeated a standing challenge in a 10 million person data breach case).

---

[2] *See* https://www.lawdragon.com/guides/2023-09-08-the-2024-lawdragon-500-leading-litigators-in-america.
[3] *See, also Morrill v. Lakeview Loan Servicing, LLC*, Case No. 1:22-cv-20955-DPG (S.D. Fla.) (where Mr. Klinger is appointed to the leadership committee in a data breach class action involving 6 million consumers); *Sherwood v. Horizon Actuarial Services, LLC*, Case No. 1:22-cv-01495-ELR (N.D. Ga.) (where Mr. Klinger is court-appointed co-lead counsel in a data breach class action involving 4 million consumers).

Over the past three years, Mr. Klinger has settled on a class wide basis more than 50 class actions involving privacy violations, the majority of which are data breaches, in State and federal courts across the country as lead or co-lead counsel.[4] To his knowledge, no other attorney in the country has settled and won court approval of more data breach class actions during this time period. Representative cases include:

- *Parris, et al., v. Meta Platforms, Inc.*, Case No.2023LA000672 (18th Cir. DuPage Cty., Ill.) (where Mr. Klinger served as lead counsel and obtained a settlement of $64.5 million for 4 million consumers in a privacy class action);
- *Boone v. Snap, Inc.*, Case No. 2022LA000708 (18th Cir. DuPage Cty., Ill.) (where Mr. Klinger served as lead counsel and obtained a settlement of $35 million for 3 million consumers in a privacy class action);
- *Carrera Aguallo v. Kemper Corp.*, Case No. 1:21-cv-01883 (N.D. Ill. Oct. 27, 2021) (where Mr. Klinger served as lead counsel in a data breach class action involving 6 million consumers and reached a settlement valued at $17 million); and
- *In re: East Palestine Train Derailment*, No. 23-cv-00242 (N.D. Ohio) (where Mr. Klinger serves on the leadership team that obtained a settlement of $600 million in a complex class action).

In addition to his professional experience, Mr. Klinger is a Certified Information Privacy Professional (CIPP/US).

Mr. Klinger also has the full weight of his law firm behind him. Since its founding in 1965, Milberg has repeatedly taken the lead in landmark cases that have set groundbreaking legal precedents, prompted changes in corporate governance, and recovered over $50 billion in verdicts and settlements.[5] Milberg has been instrumental in obtaining precedent setting decisions at every level, including at the United States Supreme Court.[6] The firm pioneered federal class action

---

[4] Mr. Klinger has also successfully litigated privacy class actions through class certification. See *Karpilovsky v. All Web Leads, Inc.*, No. 17 C 1307, 2018 WL 3108884, at *1 (N.D. Ill. 2018) (where Mr. Klinger certified, over objection, a nationwide privacy class action involving more than one million class members; the case ultimately settled for $6.5 million).

[5] *See, e.g.*, *In re Tyco Int'l Ltd., Sec. Litig.*, MDL 1335 (D.N.H.) (serving as lead counsel and obtaining approval of $3.2 billion settlement); *In re Prudential Ins. Co. Sales Practice Litig.*, No. 95-4704 (D.N.J.) (serving as lead counsel and recovering more than $4 billion for policyholders); *see also* https://milberg.com/outstanding-recoveries/.

[6] *See* https://milberg.com/precedent-setting-decisions/page/3/.

16

litigation and is widely recognized as a leader in defending the rights of victims of large-scale wrongdoing. Milberg has been described by the New York Times as "[a] powerhouse that compelled miscreant and recalcitrant businesses to pay billions of dollars to aggrieved shareholders and customers."[7]

Milberg is one of the largest plaintiffs' class action firms in the United States (and abroad). The firm currently is involved in some of the largest and well-known class action cases in the country and is particularly active in the field of data breach and privacy litigation. The firm is comprised of more than one hundred-twenty attorneys who work from offices across the United States and in Portugal, the United Kingdom, the Netherlands, and Germany. Milberg attorneys come from diverse backgrounds and reflect the diversity of the bar and the classes they seek to represent—from the standpoint of age, gender, experience, and geographic location.[8] Mr. Klinger's resume is attached as **Exhibit 3**.

<u>**Proposed Local Counsel and Proposed Executive Committee**</u>

The Proposed Local Counsel, Joe Kendall, is an extremely well-respected member of the Texas Bar having practiced for decades in this district. He is well versed in class actions, local rules, and procedure. He previously served as a United States District Judge on this Court. He has previously served, and currently serves as class counsel in over 50 pending data breach cases in Texas federal courts and is familiar with litigating privacy cases.

The PEC is comprised of attorneys who, similar to Proposed Interim Co-Lead Counsel and Proposed Local Counsel, have substantial data breach experience. Each has served as lead counsel

---

[7] Sam Roberts, *Melvyn Weiss, Lawyer Who Fought Corporate Fraud, Dies at 82*, N.Y. TIMES, (Feb. 5, 2018), https://www.nytimes.com/2018/02/05/obituaries/melvyn-weiss-lawyer-who-fought-corporate-fraud-dies-at-82.html.
[8] *See* Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices for Large and Mass-Tort MDLs* at 38, 45-46 (2d ed. 2018), *available at* https://judicialstudies.duke.edu/wp-content/uploads/2018/09/MDL-2nd-Edition-2018-For-Posting.pdf ("Duke Guidelines") ("The judge's primary responsibility in the selection process is to ensure that the lawyers appointed to leadership positions are capable and experienced and that they will responsibly and fairly represent all plaintiffs, keeping in mind the benefits of diversity of experience, skills, and backgrounds.").

in many class action cases throughout the country in federal and state courts and are more than qualified for the proposed appointment here. Proposed Co-Lead Counsel will oversee the PEC, which will be made up of lawyers from the Related Actions.

### a. Proposed Interim Class Counsel Have and Will Continue to Devote Sufficient Resources to this Case.

The resources that Proposed Interim Class Counsel have already committed and will continue to commit to the case also strongly supports the appointment of Proposed Interim Class Counsel. As demonstrated above, Proposed Interim Class Counsel and their firms' resources are not merely financial, but also include substantial expertise and work-product developed in other similar cases, which will benefit Plaintiffs and the putative class. Proposed Interim Class Counsel's ability to draw from this well-developed repository of information will also allow them to streamline the litigation.

Each attorney understands the time, energy, and skill necessary to lead this litigation, and all have committed the resources required to ensure the effective and efficient representation of the putative class. Proposed Interim Class Counsel can, as needed, draw upon the skills and talents of experienced attorneys and staff members located across the country. In fact, Proposed Interim Class Counsel have already demonstrated their commitment to this litigation by devoting substantial resources to it and coordinating among themselves to file this leadership proposal and to consolidate the Related Actions. And, as their firm résumés and counsels' experience indicate, Proposed Interim Class Counsel have the resources and capacity to see this litigation through to its conclusion, including trial.

If appointed as interim counsel, Proposed Interim Class Counsel will continue to commit the same resources and effort to this case as they have committed to other successful class action

18

litigations and are equally committed to working cooperatively and efficiently for the benefit of the putative class.

### b. Additional Factors Supporting Formal Designation of Proposed Interim Class Counsel.

Plaintiffs and their counsels' support for the proposed leadership structure also weighs in favor of appointing the Proposed Interim Class Counsel. Notably, the proposed leadership structure has the support of all the Plaintiffs and the law firms involved in the litigation. *See In re Aluminum Phosphide Antitrust Litig.*, No. 93-2452, 1994 WL 481847, at *5, 7 (D. Kan. May 17, 1994) ("In designating lead counsel, the court will also give due consideration to the preferences expressed by the parties themselves, through their counsel."); *see also In re Wendy's Co. S'holder Derivative Litig.*, No. 1:16-cv-1153, 2018 WL 6605394 at *2 (S.D. Ohio Dec. 17, 2018) (quoting *Kubiak v. Barbas*, No. 3:11-cv-141, 2011 WL 2443715, at *2 (S.D. Ohio June 14, 2011) ("[C]ounsel's ability to make inclusive efforts on behalf of all plaintiffs is an 'essential attribute' for lead counsel.")); *Moehrl v. Nat'l Ass'n of Realtors*, No. 19-cv-01610, 2020 U.S. Dist. LEXIS 164895, at *10 (N.D. Ill. May 30, 2020) ("And all Plaintiffs in this action have consented to the proposed leadership structure."); Manual for Complex Litigation §§ 10.22 (noting desirability of "the attorneys coordinat[ing] their activities without the court's assistance"), 10.272 (describing "private ordering" approach). Indeed, after their cases were filed, Proposed Interim Class Counsel moved quickly to coordinate the proposed leadership structure to avoid any delay attendant with potential multiple and ongoing case filings. Proposed Interim Class Counsel seek this leadership structure to best serve the interests of the proposed classes in the most efficient manner possible.

Another important consideration in selecting leadership is the ability to work well as a team, with opposing counsel, and with the Court. The role of leadership in complex litigation places a premium on professionalism, cooperation, courtesy, and acceptance of the obligations

19

owed as officers of the Court, all of which are critical to the successful management of the litigation. *See* Manual for Complex Litigation § 10.21. One of the demanding aspects of complex litigation is "the difficult[y] of having to communicate and establish effective working relationships with numerous attorneys (many of whom may be strangers to each other)." *Id*. Unlike defense counsel, the plaintiffs' side of consolidated litigation must quickly and effectively merge to form an alliance. This process has the potential for disorganization, in-fighting, and inefficiencies. It is useful to consider whether counsel applying for leadership "have worked together in other cases, their ability to collaborate in the past, divide work, avoid duplication, and manage costs." Duke Guidelines, *supra*, at 43. Selecting lawyers who have previously worked together has many benefits. They have developed working relationships, know of complementary talents, and have "developed certain systems for handling workflow and comparative advantages that will help expedite the case relative to a leadership committee working together for the first time." *Id*. Nowhere could these sentiments be more accurate than among the counsel proposed for Proposed Interim Class Counsel. In other words, Proposed Interim Class Counsel are well suited to jointly prosecute this action because they are able to work cooperatively and inclusively with themselves and other counsel.

Importantly, Proposed Interim Class Counsel have not made any agreements with each other with respect to funding, cost-sharing, pooling clients, fees, or any other matter. They each understand that they will be required to make contributions to fund the litigation, and they will not accept any third-party litigation funding to do so.

While Proposed Interim Class Counsel intend to litigate the case zealously, they are fully aware of the Court's expectation that they prosecute the case efficiently and without duplication. Accordingly, they have already discussed how best to organize to effectively use their members'

diverse skills and unique experiences for the efficient prosecution and management of this litigation while avoiding unnecessary and duplicative billing.

Finally, this Court should appoint Proposed Interim Class Counsel because their firms filed the first three actions against Defendant. *See Shane White v. Medical Review Institute of America, LLC*, Case No.: 2:22-cv-00082-DBP, 2022 U.S. Dist. LEXIS 132016, at \*8 (D. Utah July 22, 2022) (collecting cases). It is well-established that courts across the country give deference to counsel in the first-filed cases where, as here, they are more than qualified to handle the action. *See In re Mun. Derivatives Antitrust Litig.*, 252 F.R.D. 184, 186 (S.D. N.Y. 2008) (appointing as interim lead counsel the firms that filed the first complaints and holding that where a firm has "filed the first complaint[] in [the] case, and the subsequent complaints filed . . . are substantially similar to those initial filings," it provides evidence of the firm's "substantial history of investigating the potential claims in this action."); *see also In re Insulin Pricing Litig.*, 2017 WL 4122437, at \*3 (D.N.J. Sept. 18, 2017) (appointing class counsel in part because they "filed the first complaint in this litigation"); *Steele v. United States*, 2015 WL 4121607, at \*4 (D.D.C. June 30, 2015) ("[S]ince both groups are more than qualified to handle this action, it would be imminently reasonable to select the Motley Rice Group on the basis that their complaint was filed first."); *Michelle v. Arctic Zero, Inc.*, 2013 WL 791145, at \*2 n.3 (S.D. Cal. Mar. 1, 2013) ("[F]irst-to file can be a relevant factor when the factors for class counsel do not tilt heavily in either direction and there is a need for an objective tie-breaker."); *Richey v. Ells*, 2013 WL 179234, at \*2 (D. Colo. Jan. 17, 2013) ("Ultimately, Plaintiff Richey was the first to file his case and, therefore, the Court appoints his counsel as Lead Counsel for the consolidated action."); *Carlin v. Dairy America, Inc.*, 2009 WL 1518058, at \*2 (E.D. Cal. May 29, 2009) (where multiple counsel filing two identical class action lawsuits seek appointment of interim class counsel, appointment of the first-filed counsel is

appropriate where "a simple comparison of the original complaint . . . with the [second-filed complaint] reveals that they are almost identical"); *Moradi v. Adelson*, 2011 WL 5025155, at *3 (D. Nev. Oct. 20, 2011) ("Moreover, as the Moradi Plaintiffs were the first to file suit, it would be appropriate to assign [their attorneys] as lead counsel."); *Biondi v. Scrushy*, 820 A.2d 1148, 1159 (Del. Ch. 2003) (noting that courts will consider which action was filed first for lead counsel purposes where "there is a need for an objective tie-breaker").

III.   **CONCLUSION**

For the reasons set forth above, Plaintiffs respectfully request the Court grant this Motion and enter an order: (1) consolidating the above-styled actions (the "Related Actions"), as well as any other future actions based upon the same facts and law, under the first-filed case number and bearing the new case style: "*In re Landmark Admin LLC Data Incident Litigation*"; (2) appointing Tyler J. Bean of Siri & Glimstad LLP, A. Brooke Murphy of Murphy Law, and Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC as Interim Co-Lead Counsel ("Proposed Interim Co-Lead Counsel"); (3) appointing Joe Kendall of Kendall Law Group, LLP as Local Counsel ("Proposed Local Counsel"); (4) appointing Billy Howard of The Consumer Protection Firm (to be Executive Committee Chair), Jeff Ostrow of Kopelowitz Ostrow, P.A., Jonathan S. Mann of Pittman, Dutton, Hellums, Bradley & Mann, P.C., Andrew Shamis of Shamis & Gentile, P.A., Billy Howard of The Consumer Protection Firm, J. Gerard Stranch IV of Stranch, Jennings & Garvey, PLLC, Marc H. Edelson of Edelson Lechtzin LLP, LLP, Terry R. Coates of Markovits, Stock & DeMarco, LLC, M. Anderson Berry of Clayeo C. Arnold, Jessica Wilkes of Federman & Sherwood, Courtney Maccarone of Levi & Korsinsky, Bruce Steckler of Steckler Wayne & Love, PLLC, and Stephen R. Basser of Barrack, Rodos, & Bacine to the Plaintiffs' Interim Executive Committee ("Proposed PEC"); (5) staying the Related Actions, including the Defendants' responsive pleading deadlines, and setting a deadline for the filing of a single Consolidated

Complaint 60 days after the court's order consolidating the cases and appointing leadership; and

(6) setting the deadline for Defendants' response to the Consolidated Complaint 60 days thereafter,

setting a deadline 60 days thereafter for Plaintiffs' response, followed by 21 days thereafter for

Defendants' reply.

Dated: November 11, 2024                    Respectfully submitted,

                                            /s/ Joe Kendall
                                            JOE KENDALL
                                            Texas Bar No. 11260700
                                            **KENDALL LAW GROUP, PLLC**
                                            3811 Turtle Creek Blvd., Suite 825
                                            Dallas, Texas 75219
                                            Telephone:  214/744-3000
                                            Fax: 214/744-3015
                                            jkendall@kendalllawgroup.com

                                            Tyler J. Bean (*pro hac vice* forthcoming)
                                            **SIRI & GLIMSTAD LLP**
                                            745 Fifth Avenue, Suite 500
                                            New York, New York 10151
                                            Tel: (212) 532-1091
                                            E: tbean@sirillp.com

                                            A. Brooke Murphy
                                            **MURPHY LAW FIRM**
                                            4116 Will Rogers Pkwy, Suite 700
                                            Oklahoma City, OK 73108
                                            Telephone: (405) 389-4989
                                            abm@murphylegalfirm.com

                                            Gary Klinger (*pro hac vice* forthcoming)
                                            **MILBERG COLEMAN BRYSON PHILLIPS
                                            GROSSMAN, PLLC**
                                            227 W. Monroe Street, Suite 2100
                                            Chicago, IL 60606
                                            Telephone: (866) 252-0878
                                            gklinger@milberg.com

                                            *Counsel for Plaintiffs Newson, Tanner, and
                                            Williams and Proposed Co-Lead Counsel*

23

## CERTIFICATE OF CONFERENCE

Undersigned counsel certifies that counsel for Plaintiffs Raymond Newson, Donald Tanner, and La'Tonya Williams have jointly conferred with counsel for all other Plaintiffs and Defendant Landmark Admin, LLC in the Related Actions. All Plaintiffs' counsel agree to the relief requested herein, and Counsel for Defendant Landmark Admin, LLC confirmed that Landmark Admin, LLC does not oppose consolidation, takes no position on the appointment of leadership, and agrees to the proposed filing and briefing schedule. Counsel for Defendant Liberty Bankers Insurance Group has not yet made an appearance, and its position is unknown.

*/s/ Joe Kendall*
Joe Kendall

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served upon all counsel of record for each party in the above-captioned actions sought to be consolidated and Defendants Counsel via electronic mail on November 11, 2024.

*/s/ Joe Kendall*
Joe Kendall

24